ALFORD, Judge.
This is an appeal from a decision of the State Civil Service Commission terminating appellant, John Philson, from his position as Correctional Security Officer II serving with permanent status at Louisiana Training Institute at East Baton Rouge Parish. By letter dated February 12, 1982, over the signature of L.M. Chustz for John T. King, Secretary of Corrections, appellant was advised that he was being terminated from his position effective that day.
As cause for this action, the letter of removal states that appellant violated the Department of Corrections Employee Rules and Procedure No. 13(b) regarding failure to follow established procedures which resulted in an escape. In support of the severity of the action taken, the letter of removal cites a prior five day suspension for unauthorized watching of television while on duty and for contraband.
On March 12, 1982, appellant, in proper person, filed a notice of appeal wherein he stated that he did not violate any established procedures and that other duties required him to be elsewhere when the escape occurred. A public hearing was held in Baton Rouge on August 25, 1982, before a referee appointed by the commission. In an opinion dated April 8, 1983, the State Civil Service Commission found that the appointing authority had met its burden of proving the charges against appellant. *1313 The Commission further found that the efficiency of the public service was impaired because appellant did not properly discharge his responsibilities to the agency he served. We agree.
The Commission made the following factual findings:
On January 21, 1982, appellant worked the 4:00 p.m. to midnight shift at Pine-crest Dormitory along with Corrections Security Officer I Cleveland Tanner. Appellant was a Corrections Security Officer II.
Appellant was responsible for watching the students and for transporting them to and from their destinations. Appellant was also responsible for counting the students and turning in the count to the security building at ten minutes to each hour or more often if necessary. This count was taken to ensure that no students had escaped. If the count comes up short, appellant’s duty was to recount immediately and notify security and the chase team.
Appellant turned in his head count to security at every hour except 8:50 p.m. Around 8:30 p.m., there was a fight in Pinecrest Dormitory. One of the students was injured and appellant transported that student to the infirmary. Appellant left Corrections Security Officer I. Tanner, at the Dorm and thought that Tanner had called in the 9:00 p.m. count. Tanner did not call in the 9:00 p.m. count.
Because appellant had not turned in his 9:00 p.m. count, Laura Turner, Corrections Security Officer in the security building called and requested a count which she received from Corrections Security Officer Tanner.
At 9:50 p.m., appellant notified Burnette Carter, shift supervisor that three students were missing.
Immediately Mr. Carter went to Pine-crest Dormitory and along with appellant he recounted the students. Mr. Carter determined that three students were missing.
Shortly after Mr. Carter arrived at the Dorm, Reginald Parquet, Superintendent, came to Pinecrest Dorm. Mr. Parquet had heard over his portable radio that three students were missing.
Mr. Parquet questioned appellant about the escapes. Appellant told Mr. Parquet that three black males whose names were Carter, Hudson and Bledso, had escaped. Appellant told Mr. Parquet that he did not know how the students had escaped;
Mr. Parquet and several other officers searched the building and discovered that the students had escaped through a window on the first floor of Pinecrest Dormitory.
A subsequent head count of the students indicated that in fact four students had escaped and that one of the students was white. Additionally, one of the three students named by appellant had escaped and the other two students named by appellant were still in the dorm.
The misinformation given by appellant and relayed to JS-9 (Chase Team) caused problems for the chase team. The chase team was searching the Baton Rouge area for three black males, Hudson, Carter and Bledso, when in fact only one of the students named had escaped and one of the escapees was a white male who the search team did not know until some time later was missing.
On appeal, the factual findings of the State Civil Service Cbmmission should not be disturbed in the absence of manifest error. Department of Public Safety, Office of State Police v. Rigby, 401 So.2d 1017 (La.App. 1st Cir.1981), writ denied 406 So.2d 626 (La.1981). This court must therefore determine if the facts, as found by the Commission, are supported by the evidence and if the facts justify the actions taken. Ryder v. Department of Health and Human Resources, 400 So.2d 1123 (La.App. 1st Cir.1981). We find that both of these conditions have been met in this case.
Appellant first maintains that the referee appointed by the Commission to conduct his *1314 hearing was not qualified. Appellant bases this argument on the fact that Article X, Section 12 of the 1974 Louisiana Constitution was amended by Acts 1982, No. 883 § 1, effective October 15, 1982, which imposed the requirement that any referee appointed by the Commission be admitted to the practice of law in this state for at least three years prior to his appointment. We note that under Article X, Section 12, as it appeared at the time of this hearing, the referee appointed by the Commission was a duly qualified official.
It is appellant’s contention that the referee’s experience resulted in less than a full and impartial hearing. We disagree. Appellant chiefly complains that the referee erroneously limited his cross examination of Mr. Carter, appellant’s immediate supervisor on the night in question. We simply note that the line of questions appellant was attempting to pursue had absolutely no relevance to the matter at hand, and thus, appellant was in no way prejudiced by this ruling.
Appellant next maintains that the referee erred in not granting his request for a continuance on the morning of the scheduled hearing. Apparently, appellant had assumed that a co-employee, who Mr. Philson alleged was knowledgeable in the Civil Service Rules, would be allowed to represent him at the hearing. On the day before the scheduled hearing, appellant found out that his representative was not qualified, and thus, he unsuccessfully attempted to obtain counsel.
In refusing to grant the continuance, the referee noted that the Civil Service Rules, along with a proper person letter advising of the right to counsel, had been mailed to appellant. The referee further noted that she herself had spoken and corresponded with appellant concerning the hearing prior to the scheduled date. Although appellant denied ever receiving the above mentioned proper person letter, the referee determined that a continuance would unduly prejudice the appointing authority. We find no abuse of the referee’s discretion in refusing to grant the continuance. Appellant’s removal letter dated February 12, 1982, clearly states, “The appeal must conform to the provision of Chapter 13 of the Civil Service Rules.” Additionally, appellant himself cites- rule 13.19(b), which provides for appellant’s right to counsel, in his request for the continuance. Clearly, appellant simply failed to take appropriate action on his behalf. We further note that Mr. Philson’s chosen representative was allowed to advise appellant during the proceeding.
Appellant finally maintains that the appointing authority failed to meet its burden of proving legal cause for his termination. We disagree. Appellant was charged with violation of Department of Corrections Rule 13(b) which provides: “Failure to follow established procedures which result in an escape, an aggravated assault or destruction of state property.” We are of the opinion that the evidence clearly establishes no manifest error in the findings of fact reached by the Commission, and that those facts support the conclusion that Mr. Philson violated Rule 13(b).
Appellant’s testimony reveals that he was aware that he was the senior officer in charge of Pinecrest Dormitory on the night in question. Further, the testimony of appellant’s ranking officers affirmatively shows that the established procedure was for the senior officer in charge of a dormitory to stay in the facility and send the junior officer on routine duties such as accompanying inmates to the infirmary. Mr. Philson was aware that the inmates had been giving the junior officer some trouble prior to the fight and yet he left this inexperienced officer alone in the dormitory. Additionally, the misinformation relayed by appellant concerning the number, identity and racial characteristics of the escapees further served to thwart the recapture efforts of the chase team.
Having determined that the Commission’s factual findings, and the conclusions drawn from them, are not manifestly erroneous, we must now determine whether the action taken in terminating appellant *1315 from his position was justified under the circumstances. We find that the action taken by the Commission was justified. As noted above, appellant had been suspended on a prior occasion for different violations. Given the very serious responsibility of protecting the general public imposed upon the Department of Corrections, we agree in the Commission’s conclusion that the agency can ill-afford to employ an individual' who fails to discharge in an efficient manner the primary responsibilities of his position.
Therefore, for the foregoing reasons, the decision of the State Civil Service Commission terminating appellant’s employment with the Department of Corrections is hereby affirmed. Appellant is cast with costs of this appeal.
AFFIRMED.