SHORTESS, Judge.
L.D. Addison (Addison) was a permanent civil service employee in the position of Affirmative Action/Equal Employment Opportunity Employer Coordinator at L.S.U. Medical Center in Shreveport (LSUMC). He has appealed to us from adverse decisions of the Civil Service Commission (Commission), the most serious of which terminated his employment after 22 years of service. His other appeals are from a five-day suspension, a ten-day suspension, and an unsatisfactory service rating. The civil service referee consolidated these disciplinary appeals for a single hearing which began on December 18, 1986.
There is a question about the timeliness of the appeal from the unsatisfactory service rating. The referee’s ruling in that matter is not included in his November 12, 1987, decision but appears to have been rendered sometime prior to the resumption of the hearing on June 8,1988. During the hearing of the consolidated appeals, the referee indicated that an opinion had already been entered on the rating matter. That ruling is not in the record before us as is required by Rule 2-12.4 of the Uniform Rules of the Courts of Appeal. Additionally, it is not evident that an application for review of that decision by the Commission was taken, so it became final on the date it was filed. Civil Service Rule 13.36e. That date is not determinable from this record, though it appears to have been several months prior to the January 22, 1988, final decision[1] noticed for appeal by letter dated February 17, 1988.
*752 An appeal from a decision of the Commission must be taken within 30 days after it becomes final. Addison has included the referee’s decision in the unsatisfactory service rating in his specifications of error. For reasons expressed above, the matter is not properly before us.
FACTS
By memorandum dated July 31, 1985, Martha Lennard, Addison’s immediate superior, requested him to prepare an oral and written presentation regarding affirmative action at LSUMC which was to be part of an orientation program for new employees. By memorandum dated August 2, 1985, to Raymond Bisson, Director of Human Resources Management at LSUMC (a supervisory position over both Addison and Lennard), Addison asserted that the request was “clearly not my [responsibility].” The tenor of the August 2 memorandum is hostile and defensive. We quote the text in its entirety because the attitude reflected therein was maintained by Addison throughout the course of the correspondence that circulated between Addison, Bisson, and Harold White (Bisson’s supervisor), and throughout the Commission hearing, as is evidenced by repeated interruptions and admonitions contained in the five-volume transcript of that hearing:
RE: Correspondence from Martha Len-nard dated July 31, 1985
Ms. Martha Lennard in the above identified correspondence has made demands on me that are clearly not my responsibilities according to LSUMC Affirmative Action Plan. I believe the intent by Ms. Lennard is to place me in a negative posture that will further injure me. She used her position last year (1984) to injure me without cause. I do not trust Ms. Lennard and this has been expressed to you on a number of occassions (sic). Therefore, if the request she made is legitimate I need a written authorization from you or someone above your level. This is for my protection. Also, if the request is legitimate I need an outline of what is to be discussed and procedures for the presentation.
No action will be taken on Ms. Lennard’s request until the concerns expressed by me are addressed.
Bisson testified that he had made a similar request verbally some time prior to July 31, 1985, and that the purpose of Lennard’s memorandum was to document the request because Addison had not responded. Sometime after Addison’s August 2 memorandum, he met with Harold White, Assistant Vice-Chancellor for Business Affairs for LSUMC, which resulted in a memorandum dated November 14, 1985, from Addison to Bisson, cataloguing in very general terms the various responsibilities of the Affirmative Action/Equal Employment Opportunity Employer Coordinator. We note that included in that listing is the development of orientation programs for new employees.
Bisson responded by memorandum dated November 26, 1985, requesting more specificity, schedules for implementation, expected dates of completion and an “Affirmative Action statement suitable for distribution as an Administrative Directive.” Addison did not respond. Bisson testified that he had verbally requested a response and that when none was forthcoming a memorandum dated January 6, 1986, set a January 10, 1986, deadline for Addison’s response. By letter dated January 21, 1986, Bisson issued Addison a five-day suspension for failure to submit a response to the November 26, 1985, memorandum. By memorandum dated January 23, 1986, Harold White commuted that suspension to a written reprimand. In conjunction with the commutation, White issued Addison a lengthy memorandum citing various problems that Addison was expected to correct, including:
1. punctuality;[2]
*753 2. disobedience to the directives of superiors;
3. failure to use the sign-out board when leaving the premises; and
4. completion of outstanding projects (including a response to Bisson’s November 26,1985, memorandum as well as the development of the orientation program presentation).
In addition, White directed Addison to submit weekly status reports as to the progress of these projects and to include other work performed during the week. The memorandum also cautions Addison to develop a more professional attitude, citing specifically a remark in a memorandum that Addison would not meet with Bisson and Lennard without a tape recorder. White, in unequivocal terms, warned that such an attitude was insubordination and would lead to suspension and termination.
By memorandum dated February 12, 1986, Bisson noted Addison’s failure to meet the February 2, 1986, deadline for a response to the November 26, 1985, memorandum and requested, again, Addison’s response. By memorandum dated February 17, 1986, White reiterated his January 29, 1986, correspondence, cautioned that noncompliance would lead to disciplinary action, and advised Addison to cooperate with his superiors.
Addison was issued a five-day suspension on April 8, 1986. An accompanying two-page letter cited three specific violations of policy as the basis for the suspension; all three cited violations were related to Addison’s continued failure to meet deadlines for the response to the November 26, 1985, memorandum. Bisson testified that at the time of the issuance of the suspension, Addison indicated that the work product was in draft form. Bisson requested it be completed by April 11, 1986. However, by letter dated April 10, 1986, Addison indicated that he would need six to eight weeks of “uninterrupted time” to respond. Addison further stated that Bisson’s failure to offer any suggestions or provide any “resources,” refusal to approve his attendance at workshops or conferences, and failure to purchase written materials that he needed were responsible for his inability to produce the requested response. Addison also indicated that a list of necessary resources he needed would be forthcoming.
Bisson testified that while he received Addison’s list, Addison’s request to meet with Hirokawa in connection with the preparation of the response did not pose a problem because a meeting with Hirokawa had been previously scheduled. Addison, however, did not attend that meeting. Bisson testified that the written materials Addison requested were either already available or were purchased upon his request. Bisson also testified that he had not approved Addison’s request to attend a seminar in San Francisco, California, but had indicated he would approve a similar seminar in Dallas, Texas, which Addison declined.
Gary Hirokawa, the Director of Equal Employment Opportunity Programs and Acting Director of Human Resource Management at L.S.U. Medical Center in New Orleans, testified that the work product requested of Addison in the November 26, 1985, memorandum was well within the responsibility of Affirmative Action/Equal Employment Opportunity Coordinator and that, while he was not personally familiar with Addison’s daily activities, in his opinion, one month would have been sufficient time to prepare a response while still performing daily duties. Hirokawa testified that while he was not familiar with Addison’s workload, the Affirmative Action/Equal Employment Opportunity Coordinator at L.S.U. Medical Center in New Orleans could, in his opinion, complete the work requested of Addison within one month while still fulfilling his other responsibilities.
Bisson testified that he responded to Addison’s April 10, 1986, memorandum on April 23, 1986, indicating that he would “consider the situation and be back in touch....” On May 22, 1986, Addison was issued an unsatisfactory service rating, which cited numerous specific instances of unacceptable behavior including the failure *754 to participate in the weekly orientation program, verbal abuse of Bisson’s secretary, abuse of sick leave, failure to use the sign-out board, excessive tardiness, continued involvement with the accounting department despite the directive from White that all accounting department grievances were to be referred to Bisson, failure to provide weekly status reports, and the continued failure to respond to the November 26 memorandum.
On June 5, 1986, Bisson issued Addison a ten-day suspension. Attached to the suspension form were two pages addressing the requests in Addison’s April 10, 1986, memorandum. Bisson, in this correspondence, stated simply that Addison had been given more than adequate time to complete the project and that his list of necessary resources should have been compiled some time prior to four months after the project was assigned. The suspension further stated that Addison’ would be given three days upon his return to complete the project.
The project was never completed. On August 29, 1986, Addison was issued a letter of termination. The letter cited the same deficiencies listed in the June 5, 1986, ten-day suspension and in the April 8,1986, five-day suspension. Addison appealed both suspensions and the termination to the Commission. The appeal was heard by a referee on December 18,1986, June 9-10, and July 29-30, 1987. The referee’s decision was issued November 12, 1987, denying the appeal. An application for review to the Commission was denied on January 22, 1988.
LAW
A final decision of the Commission is subject to review on any question of law or fact. La. Const. art. X, § 12. In appeals of disciplinary action, including termination, the Commission must determine independently from the facts presented whether the appointing authority has good cause for the disciplinary action it has taken and whether the measures taken are commensurate with the employee’s dereliction of duty. Walters v. Department of Police of the City of New Orleans, 454 So.2d 106, 113 (La.1984) (citation omitted).
Cause for termination includes conduct prejudicial to the public service in which the employee is engaged or detrimental to the appointing authority’s efficient operation. Id. As a reviewing court, we cannot reverse a Commission determination of cause for dismissal unless it is arbitrary, capricious, or an abuse of discretion. Id. (citations omitted). Addison assigns several specifications of error, which we address in turn.
Addison assigns error in the referee’s denial of a motion to recuse urged at the beginning of the hearing. The grounds for recusal urged were the pending appeal by Addison in another matter from an adverse ruling by the same referee, and an alleged “close working relationship” between the referee and counsel for the appointing authority. The referee denied the motion, citing Civil Service Rule 13.32 which provides that recusal of a referee is governed by the grounds for recusal of a judge listed in LSA-C.C.P. art. 151. Those grounds include, inter alia, the performance of a “judicial act” in the cause in another court and bias, prejudice, or interest in the cause or toward one of the parties or one of the parties’ attorneys. In order to have an interest in the cause, the facts must indicate that there would be some personal advantage in deciding the case for or against one of the parties. Rollo v. Dison, 402 So.2d 122, 126 (La.App. 2d Cir.), writ denied, 404 So.2d 265 (1981). The facts at bar do not remotely suggest that such is the situation here. Neither had the referee performed a “judicial act” in the cause in another court. The other matter pending appeal was just that, another matter. This assignment of error is without merit.
Addison also assigns as error the referee’s denial of his motion to continue urged at the outset of the hearing on December 18, 1986. In denying the motion, the referee noted that Addison had urged a similar motion two weeks previous to the hearing date in proper person, which was denied. The motion was premised on Addi *755 son’s counsel having been retained on the day of the hearing. The hearing officer was unimpressed, stating that Addison had sufficient notice and time to retain counsel. Civil Service Rule 13.18c provides that “[n]o continuance shall be granted except for compelling cause or to serve the ends of justice.” A motion to continue rests with the sound discretion of the referee. See Philson v. Department of Corrections, 451 So.2d 1311, 1314 (La.App. 1st Cir.1984). Addison had notice of the hearing date. We observe, additionally, that only one of LSUMC’s witnesses was heard the first day of the hearing and that six months elapsed thereafter before resumption of the hearing. When the hearing resumed, the same witness was still on direct examination.
Addison assigns as error the consolidation of the three appeals. Civil Service Rule 13.23 provides that two or more appeals involving similar or related circumstances may be ordered by the Commission to be jointly heard or consolidated for appeal. Addison argues that the referee, not the Commission, ordered the consolidation. Civil Service Rule 13.20 provides, in pertinent part, that a referee “shall have subpoena power and power to administer oaths as well as the powers granted in this chapter.” The power of the referee is plenary as regards the procedure for hearing appeals, as is evidenced by the enumeration of his powers in Civil Service Rule 13.19. We believe the power to consolidate appeals or hear appeals jointly is well within the power of the referee. We observe, also, that the three consolidated disciplinary actions are so interrelated that separate hearings would not have been in the interest of an efficient administration of justice. This assignment of error is merit-less.
Addison assigns as error the referee's finding of cause for the three disciplinary actions. The referee’s written findings of fact parallel our recitation of facts as set out above and are supported by the record. The referee obviously placed little weight on Addison’s explanation for his actions and omissions and concluded that his protracted insubordination with regard to completion of assigned projects, his failure to follow LSUMC policy requiring use of the sign-out board, and his problems with punctuality impaired the efficient and orderly operation of the Human Resource Management Department at LSUMC. This decision is clearly not arbitrary, capricious, or an abuse of discretion, and the assignment of error is without merit.
Lastly, Addison asserts, through new counsel on appeal, “ineffective assistance of counsel.” Addison fails to define exactly what “ineffective assistance of counsel” in a civil context means, or offer any authority for extending this criminal doctrine to civil proceedings. The bald assertion that Civil Service proceedings are “quasi criminal” is without citation. We see no basis for extending this doctrine in this context. We observe, additionally, that if the assistance of counsel in this proceeding was, in fact, ineffective, the continued interruptions and abject lack of regard for any manner of decorum displayed by Addison contributed thereto. This assignment of error is meritless.
The consolidated appeals are affirmed at Addison’s costs. The appeal from the unsatisfactory service rating is dismissed at Addison’s costs.
AFFIRMED IN PART, DISMISSED IN PART.

. The application for review of the referee's decision in the consolidated proceedings was *752 filed in proper person and mentions the unsatisfactory service rating decision. However, the order denying that application for review, dated January 22, 1988, references only the consolidated numbers.

. There is earlier correspondence from Bisson addressing the need for punctuality as well as an "employee Warning” citing eleven dates between October 28, 1985, and November 25, *753 1985, on which Addison failed to report to work timely.