825 So.2d 1257 (2002)
Louis P. SAIA, III, et al.
v.
Harold A. ASHER, et al.
No. 2001 CA 1038.
Court of Appeal of Louisiana, First Circuit.
July 10, 2002.
*1258 Alexander Crighton, Houma, Counsel for Plaintiffs/Appellants Louis P. Saia, III and Ciana Corp.
Steven W. Usdin and, H. Minor Pipes, III, New Orleans, Counsel for Defendants/Appellees Harold A. Asher, Katz & Asher, Ltd.
Before: FITZSIMMONS, DOWNING, and LANIER[1], JJ.
LANIER, J.
This action is a suit for damages arising under La. R.S. 37:87[2] alleging a breach of a confidential communication between plaintiffs and defendants. This appeal is from a judgment sustaining the defendants' peremptory exception raising the objection of prescription and granting their motion for summary judgment.

PROCEDURAL HISTORY
Plaintiffs, Louis Saia, III and Ciana Corporation, employed defendants, Harold Asher, a CPA, and Katz & Asher, Ltd., to serve as experts in an arbitration proceeding with Northrop Grumman Corporation over the manufacturing and distribution of a product known as a pallet reefer. Asher's role was to analyze and determine the amount of damages incurred in connection with plaintiffs' claim against Northrop Grumman Corporation. Alfred Feyerabend, an employee of plaintiffs, assisted Asher in obtaining the necessary documents and information required for the analysis of damages. During the arbitration proceeding, Saia told Feyerabend that if Saia received a favorable result, Saia would pay Feyerabend a one-million-dollar bonus. Plaintiffs received a favorable result from the arbitration proceeding on December 2, 1997. Thereafter, a dispute arose about the amount of fees plaintiffs owed defendants. Defendants filed suit against Saia over the expert fees in connection with the arbitration proceedings. A settlement between the plaintiffs and defendants was reached on or about January 21, 1998. Allegedly, Asher was bitter because he received a fee less than he expected. Feyerabend left the employ of plaintiffs in the early part of 1998 and contacted Asher in March of 1998 about employment with his accounting firm. Thereafter, Asher and Feyerabend discussed, on more than one occasion, the possibility of Feyerabend bringing suit against Saia over his statement about the one-million-dollar bonus. At the request of Feyerabend, Asher referred him to several attorneys, including Walter Thompson with whom Asher had a previous working relationship. Around March of 1998, Asher and Thompson discussed whether or not Asher recalled hearing Saia make the statement to Feyerabend about the one-million-dollar bonus. On April 28, 1998, Feyerabend filed suit against plaintiffs. On January 19, 1999, under subpoena, Asher was deposed by Thompson; and on November 8, 1999, Asher, again under *1259 subpoena, testified in the Feyerabend litigation.
Plaintiffs then filed this suit[3] on January 12, 2000, alleging that Asher violated the "accountant-client privilege"[4] as established by La. R.S. 37:87, and that Asher placed his own financial interest ahead of the legitimate financial interest of plaintiffs. Defendants filed an answer on January 31, 2000, alleging the plaintiffs failed to state a cause of action. On October 24, 2000, defendants filed a motion for summary judgment and an exception raising the objection of prescription alleging that plaintiffs' claims had prescribed. A hearing was held on the motion for summary judgment and peremptory exception on December 20, 2000. Judgment was rendered on December 22, 2000, in favor of defendants granting their motion for summary judgment and sustaining their exception raising the objection of prescription. The judgment was designated as a final judgment. Plaintiffs took this suspensive appeal.

OBJECTION OF PRESCRIPTION[5] (Appellants' assignment of error no. 1)
Plaintiffs allege Asher violated Rule 501(B) of the Rules of the State Board of Certified Public Accountants of Louisiana, by placing his financial interest ahead of the financial interest of plaintiffs in testifying at his deposition in the Feyerabend case, and by testifying in the Feyerabend trial, and by discussing with Feyerabend the merits and theories of a claim against plaintiffs. Plaintiffs also allege that Asher sought "revenge" against plaintiffs and *1260 that Asher disclosed a confidential communication.
Defendants filed an exception raising the objection of prescription pursuant to La. R.S. 9:5604.
La. R.S. 9:5604 provides the peremptive period applicable to actions concerning professional accounting liability. La. R.S. 9:5604 provides:
A. No action for damages against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide professional accounting service shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred.... The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based on tort or breach of contract or otherwise arising out of an engagement to provide professional accounting service, the prescriptive and peremptive period shall be governed exclusively by this Section and the scope of the accountant's duty to clients and nonclients shall be determined exclusively by applicable Louisiana rules of law, regardless of the domicile of the parties involved. (Emphasis added.)
The record shows the trial court sustained this exception at the hearing on the motion for summary judgment and objection of prescription. Plaintiffs' claims had not prescribed on the face of their petition, and, accordingly, evidence could be introduced to support or controvert the objection of prescription. La. C.C.P. art. 931. However, at the hearing the trial judge stated, "I have some good news for all of y'all. Y'all don't have to argue because I'm just going to rule. I spent about half a day yesterday rereading this suit record and the memorandums that y'all have furnished to the court." Thereafter, no arguments were heard, no evidence was introduced, and the trial court rendered judgment. Therefore, the trial court erred in considering the materials attached to the memorandums in support and in opposition to the exception raising the objection of prescription. See Our Lady of the Lake Hosp. v. Vanner, 95-0754, p. 5 (La.App. 1 Cir. 12/15/95), 669 So.2d 463, 465; Tranum v. Hebert, 581 So.2d 1023 (La.App. 1 Cir.), writ denied, 584 So.2d 1169 (La.1991). However, no objection to consideration of the evidence was made at the trial court level or on appeal. In addition, the evidence considered by the trial court was included in the depositions, affidavits and other pleadings submitted with the defendants' motion for summary judgment and plaintiffs' opposition to summary judgment. Evidence considered by the trial court was also attached to the exception *1261 raising the objection of prescription and to plaintiffs' memorandum in opposition to the objection of prescription.[6] As no objection was raised, that evidence was sufficient to allow the trial court to rule on the objection of prescription and is sufficient to allow this court to review the trial court's decision on that issue. Fontaine v. Roman Catholic Church of Archdiocese of New Orleans,[7] 625 So.2d 548, 554 (La.App. 4 Cir.1993), writ denied, 93-2719 (La.1/28/94), 630 So.2d 787; see Martin v. Mid-South Tank Utilities Co., 614 So.2d 319, 321 (La.App. 4 Cir.), writ denied, 616 So.2d 707 (La.1993) (where the court refused to strictly require that the trial court hold an evidentiary hearing on an exception raising the objection of prescription).[8]
La. C.C. art. 3458 states:
Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period.
Plaintiffs filed this suit on January 12, 2000. Therefore, if the actions of which plaintiffs complain occurred before January 12, 1999, plaintiffs' claims would be preempted pursuant to La. R.S. 9:5604, unless plaintiffs did not receive knowledge of those acts until within one year of the filing of this suit.
Saia testified as follows at his deposition taken pursuant to this suit:
The other reason that dawned upon me is because right around that same time frame, I think right before I got the [Feyerabend] suit, I had run across Mickey Allweiss, and he said, did you get the lawsuit from Walter Thompson? I didn't even know Walter Thompson.
I said, no, what are you talking about?
He said, oh Al's [Feyerabend] suing you. I said, you know, youyou're going to be getting a lawsuit.
I said, man, what's going on, Mickey? What are you talking about? So this was prior to the letter I even think. And Jack was there also. Jack Alltmont. I said, what's that all about?
He said, well, Harold's [Asher] introduced Al to Walter Thompson.
I said, why would he do that?
And Mickey says, revenge. And I didn't think much about it. You know, I didn't get a suit, I hadn't got the letter.
In Saia's deposition is also found the following:
Q. This is a copy of your petition for damages in the current case, in Mr. *1262 Asher's case here.... Let me ask you to turn to Paragraph 16, which I think is at the bottom of the third page. And read Paragraph 16 to yourself, please.
A. Okay.
Q. In that paragraph, you state that defendant Harold A. Asher, and Mr. Feyerabend discussed in detail the possibility of a claim by Mr. Feyerabend against petitioner Louis P. Saia, III. How did you first become aware of that discussion?
A. Depositions.
Q. Mr. Feyerabend's deposition?
A. Yes. And perhaps Asher's, as well.
Q. So whichever of those was first.
A. Well, no not necessarily was first. I would have to read them and I'd have to tell you, you know, which one speaks more on that subject.
Q. Well, you were at Mr. Feyerabend's deposition then.
A. I was at all the depositions. (Emphasis added.)
Feyerabend's deposition was on September 22, 1998, and in that deposition he discusses the conversations he had with Asher and of which Saia complains in this suit. Furthermore, the record shows Feyerabend filed his suit against Saia on April 28, 1998; and Saia admitted, in his deposition, that prior to that suit he was aware that Asher and Feyerabend were allegedly trying to "shake him down" and get "revenge."
Therefore, Saia had knowledge of the acts sued upon on April 28, 1998, or, at the latest, on September 22, 1998. These dates precede January 12, 1999. The plaintiffs' action is preempted, and the trial court was correct in sustaining defendants' exception raising the objection of prescription.[9]
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court sustaining defendants' exception raising the objection of prescription is affirmed. The appellants are cast for all costs of this appeal.
AFFIRMED.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeals, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] La. R.S. 37:87 was reenacted as La. R.S. 37:86 by Acts 1999, No. 473.
[3] La. R.S. 37:105 states, in pertinent part:

A. Except as provided in this Part, no action against a certified public accountant or firm or his insurer may be commenced in any court before the claimant's request for review has been presented to a public accountant review panel established pursuant to this Part and the panel has issued a written opinion.
La. R.S. 37:107 states, "By written agreement of both parties, the use of the public accountant review panel may be waived."
La. R.S. 40:1299.39.1 provides a similar provision for any claims against a state health care provider in that they must be brought before a medical review panel before suit may be commenced in a court. This court and the Louisiana Supreme Court have held the dilatory exception of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for decision by a medical review panel before filing suit against the provider. See Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 4 (La.2/29/00), 758 So.2d 116, 119. La C.C.P. art. 926(B) states, "All objections which may be raised through the dilatory exception are waived unless pleaded therein." The parties have not raised this objection and it is waived.
[4] In Louisiana, there is no general accountant privilege. La. R.S. 37:86 prevents voluntary disclosure or compelled disclosure except by court subpoena. 19 Maraist, Evidence and Proof § 8.7, at 130, Louisiana Civil Law Treatise (1999).
[5] This court has often held that, as a general rule, the peremptory exception raising the objection of no cause of action is the correct procedural device for raising the issue of peremption. See Coffey v. Block, 99-1221, p. 8 (La.App. 1 Cir. 6/23/00), 762 So.2d 1181, 1186, writ denied, 2000-2226 (La.10/27/00), 772 So.2d 651; Dowell v. Hollingsworth, 94-0171 (La.App. 1 Cir. 12/22/94), 649 So.2d 65, writ denied, 95-0573 (La.4/21/95), 653 So.2d 572. However, the objection of prescription raised in a peremptory exception may assert any of the defenses set forth in Title XXIV Prescription of the Civil Code. Those defenses are found and defined in Chapter 1 of Title XXIV as (1) acquisitive prescription, (2) liberative prescription, (3) prescription of nonuse, and (4) peremption. Capital Drilling Co. v. Graves, 496 So.2d 487, 490 (La.App. 1 Cir. 1986). Therefore, the defendants were correct in raising the issue of peremption via the peremptory exception raising the objection of prescription.
[6] Plaintiffs' opposition to the exception raising the objection of prescription and opposition to the motion for summary judgment were contained in a single pleading, with evidence in support of both oppositions attached thereto.
[7] In Fontaine, the court stated, "under the circumstances presented by this case, where this court is convinced that the claims ... are indeed prescribed, reversing the judgment on a procedural technicality would defy judicial economy and logic. Sending the case back for the rote formal introduction of evidence which is in the record available for review would be a pointless exercise, resulting in the waste of valuable time." Fontaine, 625 So.2d at 554.
[8] A pari ratione, La. C.C.P. art. 931 states, "no evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." However, following a trial court's improper consideration of evidence in support of an objection of no cause of action, this court has considered such evidence when the evidence was in the record before this court and the record made clear that such evidence was in fact considered by the trial court in rendering its decision. See Philippe v. Lloyd's Aero Boliviano, 589 So.2d 536, 538 (La.App. 1 Cir. 1991), writ denied, 590 So.2d 594 (La.1992).
[9] Plaintiffs' assertion that defendants' actions constituted a continuing tort thereby suspending "prescription" is erroneous, as the time limitations provided by La. R.S. 9:5604 are peremptive and as such cannot be suspended. La. C.C. art. 3461. In addition, the record shows the only acts complained of that occurred after January 12, 1999, were Asher testifying while under subpoena at his deposition and at the Feyerabend litigation. Because he was under subpoena, pursuant to La. R.S. 37:87A and La. R.S. 37:86A at the time of the Feyerabend trial, those actions could not form part of a continuing tort, as those statutes provided for an exception to disclosing confidential communications while under court subpoena.