916 So.2d 252 (2005)
ASCENSION SCHOOL EMPLOYEES CREDIT UNION
v.
PROVOST, SALTER, HARPER & ALFORD, L.L.C.
No. 2004 CA 1227.
Court of Appeal of Louisiana, First Circuit.
June 10, 2005.
*253 H. Alston Johnston, III, Baton Rouge, for Plaintiff/Appellant, Ascension School Employees Credit Union.
Michael A. Patterson, Baton Rouge, for Defendant/Appellee, Provost, Salter, Harper & Alford, L.L.C.
Before: CARTER, C.J., PETTIGREW, and MCDONALD, JJ.
CARTER, C.J.
The Ascension School Employees Credit Union (the Credit Union) appeals a judgment that sustained a peremptory exception raising the objection of prescription, granted a motion for summary judgment, and dismissed all of the Credit Union's claims against the accounting firm of Provost, Salter, Harper & Alford, L.L.C. (PSHA).

FACTS AND PROCEDURAL HISTORY
The Credit Union retained PSHA to provide auditing and attestation services for the years 1998, 1999, and 2000. Those services allegedly involved confirming the existence of the Credit Union's investments, including those made with various financial institutions through Bentley Financial Services (Bentley). PSHA issued the Credit Union reports for each of those years, verifying the Credit Union's investments and stating it confirmed the balances shown in the Credit Union's general ledger with the financial institutions' balances using generally accepted auditing standards.
In October 2001, the Securities and Exchange Commission charged Bentley with securities fraud.[1] Allegedly, money entrusted to Bentley was not being invested in certificates of deposit held by other financial institutions as represented by Bentley. Bentley was subsequently placed in receivership. The Credit Union worked with the receiver and made appropriate claims in an attempt to recover over $4,000,000.00 that it had invested through Bentley.
Thereafter, the Credit Union claimed that it lost money because PSHA failed to properly perform its required obligations as auditor and accountant. Specifically, the Credit Union complained that PSHA failed to take the necessary steps to adequately confirm the existence of investments the Credit Union made through Bentley. The Credit Union contends that PSHA's actions violated generally accepted accounting standards, which PSHA stated it followed in conducting its audits and reports.
The Credit Union requested a review of its claims by a public accountant review *254 panel, pursuant to LSA-R.S. 37:71, et seq. PSHA then filed in the Nineteenth Judicial District Court a peremptory exception raising the objection of prescription with regard to its alleged failure to perform agreed upon procedures in 1998 and 1999, as well as a motion for summary judgment based on prescription with regard to its alleged failure to perform agreed upon procedures in 2000.[2] The district court sustained the peremptory exception raising the objection of prescription, granted the motion for summary judgment, and dismissed all of the Credit Union's claims against PSHA. The Credit Union now appeals.

APPLICABLE LAW
This case involves application of LSA-R.S. 9:5604 as well as legislative enactments found in Title 37 of the Revised Statutes.
Louisiana Revised Statute 9:5604 contains the time limitations applicable to actions concerning professional accounting liability and provides:
A. No action for damages against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide professional accounting service shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any accountant duly licensed under the laws of this state, or any firm as defined in R.S. 37:71, whether based on tort or breach of contract or otherwise arising out of an engagement to provide professional accounting service, the prescriptive and peremptive period shall be governed exclusively by this Section and the scope of the accountant's duty to clients and nonclients shall be determined exclusively by applicable Louisiana rules of law, regardless of the domicile of the parties involved.
D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
F. The peremptive periods provided in Subsections A and B of this Section *255 shall not apply to any proceedings initiated by the State Board of Certified Public Accountants of Louisiana.
Five years after the legislature amended LSA-R.S. 9:5604 to add subsection B specifying that the statutes' time limitations are peremptive, the legislature enacted statutes in Title 37 pertaining to claims of professional accountant liability. Most pertinent to the issues presented in this case, the legislature imposed a requirement that those advancing claims of professional accounting liability present their claims to a review panel before they commence any action in court. See LSA-R.S. 37:102; LSA-R.S. 37:105.
Louisiana Revised Statute 37:102 provides, in pertinent part:
A. All claims against certified public accountants or firms, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a public accountant review panel established pursuant to R.S. 37:109.
B. Review of a claim by a public accountant review panel shall not take place unless, within the time limitations provided for in R.S. 9:5604, a claimant files with the society a written request for review of the claim and pays to the society a one hundred dollar filing fee to defray the society's administrative costs incurred in performing the duties imposed on it by this Part.
Additionally, LSA-R.S. 37:105 provides:
A. Except as provided in this Part, no action against a certified public accountant or firm or his insurer may be commenced in any court before the claimant's request for review has been presented to a public accountant review panel established pursuant to this Part and the panel has issued a written opinion.
B. Prescription for claims against a certified public accountant or firm shall be suspended upon receipt from a claimant of a request for review by the society. Prescription for claims against a certified public accountant or firm shall resume when the claimant receives the final report of the review panel or when the review process required under this Part has been terminated. However, upon receipt by the claimant of the final report of the review panel or upon termination of the review process, there shall be a minimum of ninety days prescription remaining for the claim in question, regardless of any statute to the contrary.
In the same year that the legislature enacted LSA-R.S. 37:102 and LSA-R.S. 37:105, it enacted LSA-R.S. 37:125, which provides:
A claimant's filing with the society of a written request for review and paying to the society of the one hundred dollar filing fee in accordance with R.S. 37:102(B) shall be deemed that claimant's exercise of his right to seek judicial cognizance of the claim or claims described in the written request for review for purposes of R.S. 9:5604, and shall have the same effect for purposes of R.S. 9:5604 on the accrual of peremption as the filing of a civil suit in a court of competent jurisdiction and proper venue.
Two years later, the legislature enacted LSA-R.S. 37:92, which provides, in pertinent part:
Notwithstanding any other law to the contrary, the prescriptive and peremptive period in all actions brought in this state against any licensee or any employee or principal of a licensee shall be governed exclusively by R.S. 9:5604.
This is the last legislative enactment regarding the time within a claimant must *256 present its claims for professional accountant liability.

DISCUSSION
In Saia v. Asher, 01-1038 (La.App. 1 Cir. 7/10/02), 825 So.2d 1257, 1260-1262, this court held that the one-year and three-year time periods of LSA-R.S. 9:5604 are peremptive as opposed to prescriptive. This distinction is not a mere matter of semantics. Prescription prevents the enforcement of a right by legal action, but does not terminate the natural obligation. LSA-C.C. arts. 3447 and 1762. In contrast, peremption is a period of time fixed by law for the existence of a right. If the right is not timely exercised within the peremptive period, it is extinguished. LSA-C.C. art. 3458. Further, prescription may be renounced, interrupted, or suspended, whereas nothing may interfere with the running of a peremptive period. LSA-C.C. art. 3461; State Board of Ethics v. Ourso, 02-1978 (La.4/9/03), 842 So.2d 346, 349.
This case highlights the unfortunate and all too common confusion of prescription and peremption.[3] LSA-R.S. 9:5604 B clearly provides that the time periods the statute sets forth are peremptive. The legislation in Title 37 relative to accountants does not establish additional time limitations, but refers back to those of LSA-R.S. 9:5604. See, e.g., LSA-R.S. 37:92, 102, 125. Nonetheless, various provisions in Title 37 refer to a prescriptive time period. See, e.g., LSA-R.S. 37:92, 105. Further, Title 37 requires those advancing claims of professional accounting liability to first present their claims to a public accountant review panel. LSA-R.S. 37:102. The procedure is similar to that applicable to claims for medical malpractice, which are subject to prescriptive time periods. See LSA-R.S. 9:5628; LSA-R.S. 40:1299.39.1; LSA-R.S. 40:1299.47; Bailey v. Khoury, 04-0620 (La.1/20/05), 891 So.2d 1268, 1275. However, through Title 37, the legislature has applied that procedure to actions subject to peremptive time periods. We agree with the Credit Union's assertion that the result is confusing.
The Credit Union alleges that as a result of this confusion, it took the precaution of filing suits against PSHA in two district courts, as well as petitioning a review panel for review of its claims. After consideration of the issues, the district court sustained the peremptory exception raising the objection of prescription and granted the motion for summary judgment. The district court explicitly found that the claims relating to services rendered in 1999 and 2000 were barred by operation of prescription. The district court's ruling also implies that it found the claims relating to services rendered in 1998 were extinguished by operation of peremption. Before proceeding to the assignments of error that the Credit Union raises in this appeal, we make the following comments on the procedure employed in this case.
With regard to the claims relating to 1998, PSHA urged the defense of peremption through a peremptory exception raising the objection of prescription. Although the peremptory exception raising the objection of no cause of action is the more correct procedural device for urging peremption, peremption may also be urged via a peremptory exception raising the objection of prescription. Saia, 825 So.2d at 1259 n. 5.
*257 Both the peremptory exception raising the objection of prescription and the motion for summary judgment were presented to the district court in one document. In connection therewith, PSHA filed into the record an affidavit with multiple exhibits attached. The Credit Union opposed the exception and motion with a single memorandum with an affidavit and multiple exhibits also attached. Neither party introduced any evidence at the hearing that was held on both the exception of prescription and the motion for summary judgment. However, the district court's reasons for judgment clearly reflect that it did consider the exhibits filed in the record when it ruled on the exception of prescription. Since no objection was raised at the district court level or on appeal to the trial court's consideration of the documents attached to the combined pleading and opposition, we find that this was not reversible error. See Saia, 825 So.2d at 1260-1261.
Finally, PSHA contended, and the district court found, that the Credit Union's claims relating to services rendered in 1999 and 2000 were barred by operation of prescription. This was technically erroneous on the part of both PSHA and the district court since the only time periods applicable to the Credit Union's claims are peremptive. However, in conducting our review we are mindful that courts must construe pleadings in such a manner as to achieve substantial justice. LSA-C.C.P. art. 865. In order to arrive at the truth and avoid miscarriages of justice, harsh, technical rules of pleading are not favored in Louisiana. See LSA-C.C.P. art. 854; Budget Plan of Baton Rouge, Inc. v. Talbert, 276 So.2d 297, 302 (La.1973). Courts must look beyond the style and caption of pleadings to determine their true nature. Cook v. Matherne, 432 So.2d 1039, 1041 (La.App. 1 Cir.1983).
It is apparent that PSHA contended and the trial court found that the Credit Union's claims were untimely because the Credit Union failed to exercise its rights within the time periods of LSA-R.S. 9:5604. Those time periods are peremptive, therefore, in order to arrive at the truth and to avoid a miscarriage of justice, we must treat PSHA's pleadings as raising the true issue in this case, which is peremption.
We now address the assignments of error urged by the Credit Union. The Credit Union contends the district court's rulings, that its claims for 1998 are perempted and claims for 1999 and 2000 are prescribed, are in error because: 1) the Credit Union satisfied the requirements of LSA-R.S. 9:5604 when it simultaneously filed suits in two district courts on October 21, 2002; and 2) the Credit Union's request for review of its claims against PSHA by a review panel was made within the time delays set forth in LSA-R.S. 9:5604.
The record before us on appeal contains no evidence of lawsuits filed by the Credit Union against PSHA. We note that the record contains references to a suit filed in Ascension Parish that was allegedly dismissed as premature, and a suit filed in East Baton Rouge Parish that is allegedly still pending. There is, however, no provision in Louisiana law for this court to take judicial notice of a suit record from another court. Union Planters Bank v. Commercial Capital Holding Corp., 04-0871 (La.App. 1 Cir. 3/24/05), 907 So.2d 129, 130. Thus, without proof of those suits being filed into the record, we cannot consider the effect such filings may have had on the issues presented in this appeal.
We turn, then, to the issue of whether the Credit Union's request for review of its claims against PSHA by a review panel was timely and served as an exercise of its right within the peremptive *258 periods of LSA-R.S. 9:5604, which cannot be interrupted or suspended.[4] We are guided in our analysis by the following principles of statutory construction:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of legislative intent. La. C.C. art. 9; La. R.S. 1:4. Further, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10. And when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.
Pursuant to the standard rules for statutory construction developed in the jurisprudence: 1) it is presumed that every provision of law was intended to serve some useful purpose; 2) it is not presumed that the lawmaker intended for any part of a law to be meaningless; 3) the lawmaker is presumed to have enacted the law with full knowledge of all other laws pertaining to the same subject matter; 4) it is the duty of the courts to interpret a provision of law which harmonizes and reconciles it with other provisions pertaining to the same subject matter; and 5) when a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is preferred to one that renders part of the act nugatory. Hoag v. State, XXXX-XXXX, pp. 30-31; 836 So.2d 207. Additionally, rendering the whole, or a part, of a law meaningless is the last option available to a court when it interprets a law. Id. at pp. 31, 836 So.2d 207. Where a statute is ambiguous and susceptible of two constructions, the courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences. Progressive Sec. Ins. Co. v. Foster, 1997-2985 (La.4/23/98), 711 So.2d 675, 684.
Board of Trustees of State Employees Group Benefits Program v. St. Landry Parish Bd., 02-0393 (La.App. 1 Cir. 2/14/03), 844 So.2d 90, 97, writ denied, 03-0770 (La.5/9/03), 843 So.2d 404.
The time periods that govern actions for professional accountant liability are set forth in LSA-R.S. 9:5604 and are peremptive. Thus, if the right to bring such a claim is not exercised within those time periods, the claim is extinguished. See LSA-C.C. art. 3468. Overlaid on the requirements of LSA-R.S. 9:5604 are those set forth in Title 37 relative to review panels. Applying principles of statutory construction to harmonize the applicable statutes, we turn to LSA-R.S. 37:125. Therein, the legislature explicitly provided that a claimant is deemed to have exercised *259 its right to bring a claim for professional accountant liability and prevents the extinguishing effect of peremption when it files a request for review by a review panel.[5] Thus, we interpret the applicable statutes to provide that peremption under LSA-R.S. 9:5604 is avoided when a claimant files a request for review of its claim of professional accounting liability within one year of the negligent act, or one year of discovering the negligent act, but not more than three years after the negligent act.[6]See LSA-R.S. 9:5604; LSA-R.S. 37:102; LSA-R.S. 37:125. Accordingly, we address the issue of whether the Credit Union's request for review filed November 22, 2002, was timely.
After performing auditing and attestation services for the year 1998, PSHA issued the Credit Union a report dated January 6, 1999. The January 6, 1999 report was issued more than three years prior to the November 22, 2002 filing for review by a review panel, therefore the claims relating to services performed in 1998 and the resulting report issued by PSHA are perempted by the three-year time period of LSA-R.S. 9:5604. Accordingly, we affirm the trial court's judgment insofar as it sustained the peremptory exception raising the objection of prescription (which urged the defense of peremption) relating to the 1998 claims.
PSHA issued reports for services rendered in 1999 and 2000 dated March 8, 2000, and March 21, 2001, respectively. The Credit Union's November 22, 2002 filing for review by a review panel was within the three-year peremptive period with regard to the claims relating to each year. PSHA contends the Credit Union's claims related to services rendered in 1999 are perempted because review was not sought within one year of the date it issued its report. However, LSA-R.S. 9:5604 clearly states that an action is perempted if it is not brought within one year of the date of the alleged act or within one year of the date the alleged act is or should have been discovered. PSHA contends the Credit Union's claims related to services rendered in 2000 are perempted because review was not sought within one year of the date the Credit Union learned of the lawsuit filed by the Securities and Exchange Commission against Bentley. Again, we refer to the language of LSA-R.S. 9:5604. We find the statute to be clear that the action must be brought within one year of the date of the alleged act by the accountants or within one year of discovering the alleged acts by the accountants, but in no event more than three years after the date of the alleged act by the accountants. Resolution of these issues turns on whether the Credit Union knew or should have known of PSHA's alleged negligent acts prior to November 22, 2001.
After thoroughly reviewing the limited record herein, we find no proof that *260 the Credit Union knew or should have known of any wrongdoing by PSHA prior to November 22, 2001. Clearly, the Credit Union had knowledge of wrongdoing by Bentley more than one year prior to filing for review, however, that does not equate to knowledge of wrongdoing by PSHA. Nor do we find that because the Credit Union knew of wrongdoing by Bentley that it should have known there was wrongdoing by PSHA.
PSHA contends that the Credit Union's knowledge is reflected in minutes from a meeting of the Credit Union's Board of Directors held November 19, 2001. We disagree. The minutes of the November 19, 2001 meeting include the statement that, "[a]n emergency executive meeting has been called for Monday, November 26 at 5:00 p.m. OFI has been requested to have a representative present." This does not reflect knowledge of negligence by PSHA. PSHA submitted no other proof that the Credit Union had or should have had knowledge that it had committed any wrongdoing prior to November 22, 2001. The district court erred in concluding that the Credit Union had or should have had knowledge of PSHA's alleged negligent acts prior to November 22, 2001.
The limited record before us does not contain proof sufficient to support a finding that the Credit Union's claims against PSHA relating to services rendered in 1999 and 2000 were extinguished by peremption prior to the Credit Union's request for review of its claims by a review panel on November 22, 2002. However, we recognize that since this case is only beginning to proceed through the public accountant review panel, it is possible that discovery will yield further evidence. Our holding herein is based on the limited record before us and does not preclude PSHA from re-urging the defense of peremption should the evidence so warrant.

CONCLUSION
For the reasons set forth herein, the judgment of the district court is affirmed insofar as it sustained the peremptory exception raising the objection of prescription (which actually urged peremption) relating to claims arising out of services performed by PSHA in 1998. In all other respects, the judgment is reversed. Costs of this appeal are assessed to Provost, Salter, Harper & Alford, L.L.C.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
NOTES
[1] The Credit Union alleges that Bentley was "running a `ponzi' scheme."
[2] Such procedure is provided for by LSA-R.S. 37:108.
[3] This case reflects confusion on the part of both the legislature and trial court, as well as some confusion in the briefs presented to this court relative to the legal distinction between prescription and peremption.
[4] The Credit Union raised this issue in arguing that the suits it allegedly filed in district court satisfied the requirements of LSA-R.S. 9:5604. The Credit Union recognized that the time periods of LSA-R.S. 9:5604 are peremptive and contended that they cannot be suspended or interrupted by filing a request for review by a review panel. Therefore, the Credit Union contended, the only way to avoid the extinguishing effect of peremption was to file suit in district court. Although the issue of what effect the suits filed in district court may have had is not properly before us at this time, the procedural questions raised by the argument bear on our resolution of the issue that is properly before us, i.e., what effect the request for review by a review panel had on the applicable peremptive time periods.
[5] We acknowledge the Credit Union's argument that such procedure is atypical as a review panel has no binding adjudicatory powers. See Maquar v. Transit Mgmt. of Southeast La., Inc., 593 So.2d 365, 367 (La.1992). However, it is within the legislature's prerogative to create this procedure. We are mindful that it is not our role as a court to consider the policy or wisdom of the legislature in adopting this statutory procedure. It is our province to determine only the statutes' applicability, legality and constitutionality. Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, 1297.
[6] We specifically recognize that pursuant to LSA-R.S. 37:107, the use of the public accountant review panel may be waived by agreement of both parties. Such was the case in Saia v. Asher, supra, in which this court determined that under the circumstances of that case the claimant avoided the extinguishing effect of peremption under LSA-R.S. 9:5604 by timely filing suit in district court.