971 So.2d 1071 (2007)
Friday C. ADIKEMA
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONSOFFICE OF YOUTH DEVELOPMENTJetson Correctional for Youth.
No. 2006 CA 1854.
Court of Appeal of Louisiana, First Circuit.
September 14, 2007.
Mark E. Falcon, Daniel L. Avant, Baton Rouge, for Plaintiff-Appellant Friday C. Adikema.
Cynthia G. Eyre, Baton Rouge, for Defendants-Appellees Dept. of Public Safety & Corrections, Office of Youth Development and Jetson Center for Youth.
Robert R. Boland, Jr., Baton Rouge, for Defendant-Appellee Anne Soileau, Director, Dept. of State Civil Service.
*1073 Before: KUHN, GAIDRY, DOWNING, MCDONALD, WELCH, JJ.
WELCH, J.
Appellant, Friday C. Adikema, appeals the decision of the Civil Service Commission (Commission) upholding the designation of his resignation as one to avoid termination. We affirm.

BACKGROUND
Mr. Adikema was employed by the Department of Public Safety and Corrections (DPSC), Office of Youth Development, at Jetson Correctional Center for Youth (JCCY). He worked as an Administrative Director 3 and served with permanent status.
On January 30, 2006, Mr. Adikema was placed on suspension pending investigation of theft of state property. On February 2, 2006, DPSC notified Mr. Adikema to report to work. After Mr. Adikema reported to work, DPSC officials had him arrested, handcuffed and taken to jail, where he was charged with theft.
At the time of the arrest, JCCY Director Donna Bourque handed Mr. Adikema a Violation Report (VR-1), a document utilized by DPSC to initiate the disciplinary process, charging Mr. Adikema with aggravated malfeasance in violation of DPSC Rule 13(c). The form described in detail various building material items purchased by Mr. Adikema on his JCCY credit card for his personal use, as well as multiple charges on that card for concrete delivered to his personal residence. The VR-1 was not signed by Mr. Adikema or his employer, and it does not list a recommended disciplinary action. Mrs. Bourque also gave Mr. Adikema a letter notifying him that his initial review/Loudermill Notice[1] was scheduled for February 8, 2006.
The day before his scheduled Loudermill hearing, on February 7, 2006, Mr. Adikema sent DPSC a letter in which he requested that DSPC accept his "voluntary resignation" effective "at the close of business this day." DPSC received the resignation, and on February 14, 2006, advised Mr. Adikema that his separation had been designated as a "Resign to Avoid Dismissal."
On March 9, 2006, Mr. Adikema appealed to the Civil Service Commission, challenging the propriety of the designation of his resignation. Pursuant to an agreement of the parties, the matter was submitted on briefs and, on June 16, 2006, a Civil Service referee filed a decision upholding the designation.
Mr. Adikema did not file an application for review, opting instead to allow the referee's decision to become the final decision of the Commission, and appealed to this court. See La. Const. Art. X, § 12(A).

DISCUSSION
The final decision of the Commission is subject to review on any question of law or fact. La. Const. Art. 10, § 12; Addison v. L.S.U. Medical Center in Shreveport, 551 So.2d 750, 754 (La.App. 1st Cir.1989). The standard of appellate review for findings of fact made by referees of the Commission is the same as the review of district court decisions, that is, the Commission referee's factual findings should not be disturbed unless they are clearly wrong or the referee committed manifest error. Dunlap v. Louisiana State University Health Sciences Ctr., *1074 XXXX-XXXX, p. 4 (La.App. 1st Cir.6/9/06), 938 So.2d 109, 112. On appeal, with respect to the Commission's decisions as to jurisdiction, procedure, and interpretation of laws and regulations, the court performs its traditional plenary functions and applies the error of law standard. James v. LSU Health Sciences Ctr. Med. Ctr. of Louisiana at New Orleans, XXXX-XXXX, p. 3 (La.App. 1st Cir.11/8/02), 834 So.2d 470, 472, writ denied, XXXX-XXXX (La.4/21/03), 841 So.2d 792.
In this appeal, Mr. Adikema contends that DPSC improperly designated his resignation as a resignation to avoid dismissal in violation of Civil Service Rule 12.11(f). The rule, entitled "Resignations," sets forth in relevant part:
(f) When, after receiving notice that his dismissal has been proposed, an employee resigns to avoid dismissal, the Standard Form 1 reporting the resignation shall so indicate and a copy thereof shall be furnished to the employee.
It is undisputed that DPSC did not give Mr. Adikema actual notice, either in writing or orally, that it had made a decision to terminate him before Mr. Adikema submitted his resignation. Mr. Adikema maintains that in order for Rule 12.11(f) to apply, the appointing authority must actually convey to the employee, in writing or orally, that a termination has been proposed. He submits that until he received such actual notice from his employer, he was free to resign and such resignation could not be construed as a resignation to avoid dismissal. Under the limited circumstances of this case, we disagree.
It is well settled that Civil Service rules have the effect of law. La. Const. art. X, § 10(A)(4); Bannister v. Dep't of Streets, 95-0404, p. 5 (La.1/16/96), 666 So.2d 641, 645. Civil Service rules must be construed according to the rules of interpretation applicable to legislation. King v. LSU Health Sciences Center, XXXX-XXXX, pp. 5-6 (La.App. 1st Cir.4/2/04), 878 So.2d 544, 547. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written. La. Civ.Code art. 9. The following rules for statutory construction have developed in the jurisprudence: (1) it is presumed that every provision of a law was intended to serve some useful purpose; (2) it is not presumed that the lawmaker intended for any part of the law to be meaningless; (3) the lawmaker is presumed to have enacted the law with full knowledge of all other laws pertaining to the same subject matter; (4) it is the duty of the courts to interpret a provision of law in a manner which harmonizes and reconciles it with other provisions pertaining to the same subject matter; and (5) when a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is preferred to one that renders part of the act nugatory. Ascension School Employees Credit Union v. Provost, Salter, Harper & Alford, L.L.C., XXXX-XXXX, p. 10 (La.App. 1st Cir.6/10/05), 916 So.2d 252, 258.
Although Rule 12.11(f) requires that an employee have notice that his dismissal has been proposed prior to his resignation to avoid termination, it is silent as to what type of notice is required. As written, Rule 12.11(f) does not require the appointing authority to notify the employee, either in writing or orally, that his dismissal has been proposed prior to the resignation. Furthermore, Rule 12.11(f) is obviously designed to prevent an employee, who knows that his dismissal is imminent, from attempting to resign before the formal disciplinary process can be initiated in order to avoid the consequences of a *1075 resignation to avoid dismissal.[2] Given the purpose of the rule, in light of the absence of any language in the provision specifying the type of notice required, we construe Rule 12.11(f) to authorize the designation of a resignation as one to avoid dismissal where an employee has actual or constructive notice that his appointing authority is in the process of dismissing him, and he in fact resigns to avoid the impending dismissal.
In upholding DPSC's designation of Mr. Adikema's resignation, the referee concluded that DPSC provided Mr. Adikema information from which there could be no doubt that his dismissal was imminent. In support of her conclusion that Mr. Adikema had to know that his dismissal was imminent before he submitted his resignation, the referee relied on the following factors: (1) DPSC suspended Mr. Adikema while it investigated him on the suspicion of theft of state property; (2) DPSC had Mr. Adikema arrested for theft, handcuffed and taken to jail; (3) DPSC furnished Mr. Adikema with a VR-1 initiating disciplinary action along with a letter notifying him that his initial disciplinary hearing was set for February 8, 2006, and (4) Mr. Adikema was an administrative director at JCCY and held a position of authority, and as such, had to know that the consequences of being charged with violating DPSC Rule 13(c), malfeasance-aggravated, theft of state property, and being arrested for the theft would be dismissal. The referee also concluded that under all of the circumstances, Mr. Adikema attempted to avoid the consequences of being dismissed by resigning one day before his disciplinary hearing.
The referee's conclusion that Mr. Adikema was on notice that his dismissal had been proposed by his employer before he resigned, and its conclusion that Mr. Adikema attempted to avoid the consequences of dismissal by resigning, are factual conclusions that may not be disturbed by this court in the absence of manifest error. Both of these findings are reasonably supported by the record. Accordingly, we find no manifest error in the referee's conclusion that DPSC did not violate Rule 12.11(f) by designating Mr. Adikema's resignation as one to avoid dismissal, and we decline to disturb it.

DECREE
The decision of the Civil Service referee is affirmed. All costs of this appeal are assessed to appellant, Friday C. Adikema.
AFFIRMED.
KUHN, J., dissents with reasons.
GAIDRY, J., dissents.
KUHN, J., dissenting.
A classified state employee enjoys a property right in continued employment which cannot be deprived without due process of law. AFSCME Council # 17 v. State ex rel. Dep't of Health and Hospitals, 01-0422, p. 9 (La.6/29/01), 789 So.2d 1263, 1269. Civil Service rules have the *1076 effect of law. La. Const. art. X, § 10(A)(4); Bannister v. Dep't of Streets, 95-0404, p. 5 (La.1/16/96), 666 So.2d 641, 645.
Civil Service Rule 12.11, entitled "Resignations," sets forth in relevant part:
(f) When, after receiving notice that his dismissal has been proposed, an employee resigns to avoid dismissal, the Standard Form 1 reporting the resignation shall so indicate and a copy thereof shall be furnished to the employee. (Emphasis added.)
Civil Service Rules 6.5, 7.5, 8.9. 8.13. 8.18, 11.18, and 17.24 were amended effective August 5, 1992 to limit their adverse consequences to resignations submitted "to avoid dismissal." Prior to August 5, 1992, Civil Service Rule 12.8(f) stated:
When an employee submits a resignation his appointing authority shall, if such is the case, indicate on the personnel action form reporting the transaction that the employee submitted his resignation to escape possible disciplinary action, and a copy of said personnel form shall be given the affected employee. (Emphasis added.)
Disciplinary actions include reassignments; suspensions without pay; reductions in pay; involuntary demotions, and dismissals. See Civil Service Rule 12.2(b). Thus, under the current rules, the adverse consequences of a dismissal can only attach to those resignations that are tendered after the employee has been notified that his dismissal has been proposed.
In this case, appellant was a classified employee who enjoyed permanent status. In her factual findings, the referee noted that although at the time of his arrest the VR-1 that Ms. Bourque handed to appellant listed the times and dates of the alleged violations, it did "not indicate what, if any, disciplinary action would be recommended and [it was] not signed by anyone." Despite finding that appellant was not apprised of what, if any, disciplinary action DPSC would recommend against the former employee charged with aggravated malfeasance, in upholding the designation "Resign to Avoid Dismissal" in appellant's Employee Notification Form, the referee reasoned, "Rule 12.11(f) is silent as to what constitutes notice and DPSC provided [appellant] information from which there could be no doubt that his dismissal was imminent." In so concluding, the referee stated:
DPSC investigated [appellant] for theft of state property and DPSC had him arrested at JCCY for theft, handcuffed, and taken to jail. As he was being escorted off the grounds of JCCY, he was given a VR-1 setting forth allegations of theft and a letter notifying him that his initial review/[Loudermill] hearing[1] would be held on February 8, 2006. . . .
[Appellant] was an Administrative Director 3 at JCCY and held a position of authority. As such, he knew that the consequences of being charged with violating DPSC Rule 13(C), Malfeasance Aggravated, theft of state property, and being arrested for the theft would be dismissal. (Footnote added.)
Although I agree with the referee that a reasonable employee in these circumstances would realize that one consequence of his actions would be his dismissal from employment, because the Constitution mandates that Civil Service Rules have the effect of law, this court is duty-bound to apply Civil Service Rule 12.11(f) as written, *1077 particularly since this rule was amended to limit the adverse consequences of such resignations to instances where notice of dismissal has been given to the employee. Nothing in this record indicates that at the time he tendered his resignation, appellant knew or otherwise had been given notice that the appointing authority had "proposed his dismissal."
Because, according to the DPSC Employee Manual, a VR-1 may result in disciplinary action, I have no problem concluding that when he was handed the VR-1 form as he was arrested, appellant received notice that disciplinary action had been proposed. But Rule 12.11(1) requires more; it states that "after receiving notice that his dismissal has been proposed," the resignation shall indicate that it was done to avoid dismissal. Nothing in this record supports a finding that prior to or at the time he was arrested, when he was given the incomplete VR-1which failed to specify any comments in the "Recommended Action" portion of the document  appellant had received notice that his dismissal had been proposed. And while I tend to agree with the referee that a person in a position of authority who works at a juvenile correctional facility should know that his arrest would result in his dismissal from service, the record is devoid of any evidence outlining the job duties of an Administrative Director 3 or otherwise setting forth appellant's actual responsibilities such that we can impute such knowledge to him. Thus, even finding no error in the referee's implicit determination that the formal notice provided in the VR-1 or that of a Loudermill hearing[2] is not necessarily required under Rule 12.11(f), because disciplinary actions include reassignments, suspensions without pay, reductions in pay, involuntary demotions, and dismissals, the record simply is devoid of any evidence that appellant had actual notice that he would be dismissed as a result of the charges leading to his arrest.
Moreover, in the event appellant were to reapply for employment with the Civil Service after the appointing authority has successfully prosecuted the charges against him, Rule 7.5 permits the Director to reject the application of any person whose conduct has been infamous or disgraceful; or who has been adjudged guilty by a court of competent jurisdiction of a crime involving moral turpitude; Rule 8.13 permits the Director to cancel the employment eligibility of any applicant, or of any employee serving with other than permanent status following certification or employment, if his conduct has been infamous or disgraceful or if he has been adjudged guilty by a court of competent jurisdiction of a crime involving moral turpitude; and Rule 17.25 declares as ineligible from the preferred reemployment list former employees whose names have been removed from the applicable lists when the Director has found the person found not suitable for appointment to the position. Thus, under the Civil Service rules, a remedy exists if appellant is determined guilty.
Lacking any evidence whatsoever to support a finding that the notice appellant received prior to or at the time he was arrested apprised him that DPSC had proposed the consequence of dismissal from service, in light of the plain language of Rule 12.11(f) and its amendment effective August 5, 1992, and mindful that a classified state employee enjoys a property right in continued employment, under the law, the referee incorrectly upheld the appointing authority's action of designating the separation as "Resign to Avoid Dismissal." *1078 For these reasons, I would reverse.[3] Accordingly, I dissent.
NOTES
[1] See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494. This hearing is presided over by a review officer, who makes an initial recommendation as to what disciplinary action should be taken, and the employee is officially notified of the recommended disciplinary action.
[2] See Civil Service Rule 6.5(c) (making ineligible specified rate of pay for an employee reentering service if he resigned to avoid dismissal); Rule 7.5(7) (permitting the Civil Service Director to reject the application for admission or examination of any applicant who resigned to avoid dismissal); Rule 8.13(7) (permitting employment ineligibility to any applicant who resigned to avoid dismissal); Rule 8.18 (making ineligible for noncompetitive reemployment any former employee who resigned to avoid dismissal); Rule 11.18 (making ineligible a former employer who resigned to avoid dismissal of the privilege of recrediting all accrued annual and sick leave that was cancelled upon separation); and Rule 17.25 (declaring as ineligible from the preferred reemployment list former employees who resigned to avoid dismissal).
[1] See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
[2] See Civil Service Rule 12.7 (requiring that a permanent employee be given oral or written notice of and the reasons for the proposed disciplinary action to be taken against him).
[3] Although appellant has suggested entitlement to attorney fees, he has failed to brief this issue and, therefore, I would consider it as having been abandoned.